## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

*Case No. 08-56088*
*U.S. District Court for the Central District of California Case No. 2:07-cv-04587*

Doris Miller,

Plaintiff-Appellant,

vs.

The Regis Corporation and Supercuts Corporate Stores, Inc.

Defendants-Appellees.

On Appeal from the United States District Court for the Central District of California
By Honorable George H. Wu

### APPELLANT'S REPLY BRIEF

MARK R. THIERMAN
THIERMAN LAW FIRM
7287 Lakeside Drive
Reno, NV 89511
Telephone: (775) 284-1500
Facsimile: (775) 703-5027
Email: laborlawyer@pacbell.net
Attorneys for Plaintiff-Appellant

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

*Case No. 08-56088*
*U.S. District Court for the Central District of California Case No. 2:07-cv-04587*

Doris Miller,

Plaintiff-Appellant,

vs.

The Regis Corporation and Supercuts Corporate Stores, Inc.

Defendants-Appellees.

On Appeal from the United States District Court for the Central District of California
By Honorable George H. Wu

### APPELLANT'S REPLY BRIEF

MARK R. THIERMAN
THIERMAN LAW FIRM
7287 Lakeside Drive
Reno, NV 89511
Telephone: (775) 284-1500
Facsimile: (775) 703-5027
Email: laborlawyer@pacbell.net
Attorneys for Plaintiff-Appellant

i

## **TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………1

STATEMENT OF THE FACTS………………………………………………..3

ARGUMENT…………………………………………………………………....8

I.  THE MATRIX SYSTEM VIOLATES THE 'REGULAR RATE'
    PRINCIPLE OF BOTH CALIFORNIA AND FEDERAL
    OVERTIME LAW BY PENALIZING THE EMPLOYEE FOR
    WORKING OVERTIME AND PAYING LESS PER OVERTIME
    HOUR WORKED FOR THE SAME WORK IN DIFFERENT
    WORKWEEKS………………………………………………………8

II. USING A FIFTEEN DAY WORK PERIOD WITH A VARIABLE
    HOURLY RATE IS UNLAWFUL UNDER BOTH STATE AND
    FEDERAL LAW……………………………………………………….14

CONCLUSION…………………………………………………………………...19

ii

## TABLE OF AUTHORITIES

**Cases**

*Brennan v. Lauderdale Yacht Basin, Inc.,*
  493 F.2d 188, 191 (5th Cir. 1974)……………………...……………………..18

*Clements v. Serco, Inc.,*
  530 F.3d 1224, 1230 (10th Cir. 2008)…………………………...…………11

*Dove v. Coupe,*
  245 U.S. App. 147 (D.C. Cir. 1985)…………………………………………17

*Espinoza v. Classic Pizza, Inc.,*
  114 Cal.App. 4th 968, 972 (4th DCA 2003)………………………………..9

*Huntington Memorial Hospital v. Superior Court,*
  131 Cal.App. 4th 893 (2nd DCS 2005), 29 C.F.R. § 778.318…………...2, 9

*Keyes Motors, Inc. v. Division of Labor Standards Enforcement,*
  197 Cal.App. 3d 557, 563 (1987)…………………………………………..17

*Mormillion v. Royal Packing Co.,*
  22 Cal.4th 575 (2000)…………………………………………………………9

*Ramirez v. Yosemite Water Co.,*
  20 Ca.4th 785 (1999)…………………………………………………………9, 17

*Reich v. Midwest Body Corp.,*
  843 F.Supp. 1249, 1251 (N.D. III. 1994)……………………………………8

*Skyline Homes, Inc. v. Department of Industrial Relations,*
  165 Cal.App. 3d 239, 249 (1985)…………………………………2, 9, 10, 14

*Travis v. Ray,*
  41 F.Supp. 6, 9 (D. Ky. 1941)……………………………………………...17

*Walling v. Hardwood Co.,*
  325 U.S. 419 (1945) at p. 424………………………………………………8

## Statutes

California Labor Code 510(a)............................................................................9

California Labor Code 515(d)........................................................................10

29 C.F.R. § 778..................................................................................passim

iv

## INTRODUCTION

Appellees Regis Corporation and Supercuts Corporate Stores, Inc. used a pay system that is unlawful because it combines hourly "regular rate" that decreases as more "unproductive" hours are worked and a 15 day work period instead of a seven day workweek period over which those decreases are averaged. This combination has the net effect of reducing the hourly overtime rate from one workweek to the next based solely upon the hours worked and penalizing the employee instead of the employer for working overtime. Called the "Matrix" pay system, Appellees pay an hourly production employee an hourly amount based upon the gross revenues produced during a 15 day period. This hourly amount increases with greater revenue per hour, but not proportionally, and decreases with less revenue per hour worked. The revenue per hour is calculated based on total revenue generated from services rendered (usually hair cuts and coloring) and a very small component for product sales, divided by all hours worked, including overtime hours, during the 15 day work period. The longer the employee is required to work at non-revenue generating tasks like cleaning the store or counting out the till, the less per hour they earn, thus lowing their overtime rate if the hours generate less revenue per hour than prior hours worked. It is logical to assume that the extra non-productive hours come at the end of the work day with tasks like clean up and counting the till, so that more overtime

1

hours decrease the employee's compensation rate to the determinant of the employee and to the benefit of the employer.

A decreasing rate for more overtime hours worked violates California law as expressed in *Skyline Homes, Inc. v. Department of Industrial Relations* 165 Cal. App. 3d 239, 249 (1985) and its progeny, including amendments to the California Labor Code adopting this principle of a divisor of 40 hours for calculation of overtime rates regardless of hours worked during the workweek. In addition, using a 15 day work period for payment of non-commission wages without showing any impracticality in attributing the earnings to a particular workweek and using a non-uniform hourly pay rate among workweeks violates the federal regulations at 29 C.F.R. §778.120. The 15 day work period combined with a decreasing hourly rate based upon "production" reduces the regular rate of compensation for employees who work overtime in violation of both state and federal law and California social policy because it allows for the setoff of the overtime *rate* based upon hours worked in one week with a lower overtime *rate* based upon hours worked in another, thus paying employees less than one and one half the regular rate of pay for at least one of the two weeks. See, e.g. *Huntington*

2

*Memorial Hospital v. Superior Court* 131 Cal. App. 4th 893 (2nd DCA 2005), 29 C.F.R. §778.318.[1]

Appellant gave concrete examples from real paychecks demonstrating mathematically that the Matrix system combined with a 15 day work period produced an unlawful decrease in Plaintiff's rate of pay for overtime hours worked. Appellee countered with examples showing that the use of a 15 day period by itself does not produce any net effect on the employee's overtime rate of pay. But Appellee's examples of a lawful pay plan is irrelevant because it did not consider the impact a decrease of the hourly rate because of extra "unproductive hours" would have on the overtime rate in each workweek when using a work period greater than seven consecutive work days. There is no factual dispute over the way the Matrix system worked, only a dispute over the math and the law of both the California Labor Code and the Fair Labor Standards Act, therefore, failure to file a separate statement of material facts does not alter the results in this case, and was harmless err.

## STATEMENT OF THE FACTS

Appellant presented to the Lower Court a true and correct copy of the Supercuts Matrix S-20 pay scale and the Plaintiff's payroll check stubs which demonstrates

---

[1] " . . . the regular rate of the pieceworker will be the rate determined by dividing the total piecework earnings by the total hours worked (both productive and nonproductive) *in the workweek*.[emphasis supplied]

3

that if the employees aren't paid the base rate, which they are usually not, they are paid under the Matrix system which creates an artificial hourly wage based upon the amount of revenue from services performed per hour averaged over a 15 day period. Record, pg. 37. The Matrix is a chart, where an arbitrary hourly pay rate is based on the revenue generated per hour during the 15 day work period. The more revenue generated per hour, the more per hour the employee makes, but in a decreasing ratio to the increased revenue. The employees are paid hourly, not a commission nor a piece rate, for the majority of their pay, based upon the hourly rate determined by using the Matrix chart.

This type of pay plan closely resembles the Pseudo "percentage bonuses" plan described at 29 CFR 778.503. For each work week the "percentage" of production varies inversely with hours worked. "Such bonuses, like the bonuses described in Sec. 778.502 of this part, are generally separated out of a fixed weekly wage and usually decrease in amount in direct proportion to increases in the number of hours worked in a week in excess of 40." Id. Like a pseudo bonus plan, the Appellees pay an artificially low base rate, or the Matrix whichever is higher, which almost always is the Matrix. Like a pseudo bonus plan, the Matrix decreases the hourly rate in direct proportion to hours worked. And like a pseudo bonus plan, it is a clever but unlawful attempt to circumvent the overtime premium pay requirements of the Fair Labor Standards Act.

Appellee presented no legal justification for not using a seven day pay period for what are essentially hourly paid workers.[2] Record, pg. 37. There was no evidence of a written agreement signed by the employee agreeing to the decreasing pay per haircut as hours increased formula, as would be required under federal and California state law[3] for any non-standard, non-constant hourly rate during a workweek. The pay stubs did not indicate an hourly rate in violation of Labor Code 226. In fact, the employer purposefully hid the regressive nature of the Matrix system from the employees, presumably because if the employees knew they were working longer for less, they might find other employment for their overtime hours. Record, pg. 37-38. And under Appellees' Matrix system, the revenue per hour used for the hourly wage rate is determined by dividing the total revenue generated by the total hours worked for the 15 day pay period, even if some of those hours are overtime hours while others are regular hours, and regardless of which workweek the overtime hours fall. Record, pg. 38. The 15 day work period combined with a decreasing hourly rate as more "unproductive hours" are worked results in non-productive hours worked in one week lowering

---

[2] Sale commissions were a very small percentage of compensation. Because the hourly paid employees are primarily hourly production workers with no guaranteed draw of twice minimum wage, Appellee does not claim the inside sales exemption applies.

[3] This may have been possible between 1998 and 2000 when California adopted a 40 hour workweek, but not in this case where California had re-instituted its 8 hour day law.

the "regular rate" used to calculate overtime in another workweek, contrary to DOL regulations that each workweek must stand on its own. 29 CFR 778.104.

The Matrix decreases the hourly rate the more hours worked overtime in two ways. Record, pg. 39. First, although the hourly rate increases, the percentage of revenue generated paid to the employee goes down the more productive the employee becomes. Like a hamster on a tread wheel, the faster and harder the employee works the less per task that the employee is paid. If this was a pure piece rate system, which it is not since the employees are all hourly, the rate per piece would go down for the same rate of production as more hours are worked, thus providing a variation in wage rate based solely on hours worked. This unlawful decrease based solely on hours worked is further exasperated by the 15 day work period used to calculate the overtime hourly rate. If the employee's productive time after the first 40 hours worked is more than his productive rate during the second workweek, his pay per overtime hour is decreased for overtime worked in the first week. Second, although the total compensation may increase the more hours worked, the compensation per hour worked under the Matrix system decreases the more hours worked, a decreasing overtime hourly rate like the infamous "fluctuating workweek" system which is unlawful in California.

In addition, the Appellees used a 15 day work period to calculate overtime, rather than the mandated seven day period. Record, pg. 40. The fifteen day work period rather than a seven day workweek compounds this error by allowing the

6

premium pay for one workweek to be reduced by hours worked in a subsequent workweek. In other words, not only does the hourly rate employees earn go down the more hours worked, the extra hours occur in another workweek, essentially averaging one weeks overtime hours with another week's regular time hours to create a lower hourly rate than would have been paid had the employer used a traditional seven day workweek system, as mandated by law. The Appellees' example refuting this claim assumes a constant hourly rate in each work week, which is not the case because the Matrix system reduced the hourly rate for non-productive time. There is no legal justification for this 15 day work period, especially when it applies to the non-commission hourly earnings.

To demonstrate this point, Appellant submitted to the Lower Court payroll account information from Appellee to Appellant, period ending January 31, 2006, shows that Appellant worked 6.15 hours overtime for an overtime hourly rate of $15.3432 an hour but on subsequent payroll account information from Appellee to Appellant, period ending February 15, 2006, Appellant worked 16.39 hours of overtime yields for an hourly rate of $15.2060, which is 13.72 cents per hour less for working 10 hours longer overtime. Record, pg. 39. The pay records of Appellant show no overtime on any commissions earned, and the simple math confirms that the earnings from commission sales is not included in her overtime pay at all. Record, pg. 256. In addition, the 15 day period precludes the correct inclusion of the commission in the regular rate and the matrix rate decreases as

7

more hours are worked, thus leading to the reduction of the contribution of the commission sales earnings to the overtime rate as the amount of overtime increases. Record, pg. 256.

## ARGUMENT

## I. THE MATRIX SYSTEM VIOLATES THE 'REGULAR RATE' PRINICIPLE OF BOTH CALIFORNIA AND FEDERAL OVERTIME LAW BY PENALIZING THE EMPLOYEE FOR WORKING OVERTIME AND PAYING LESS PER OVERTIME HOUR WORKED FOR THE SAME WORK IN DIFFERENT WORKWEEKS

"Overtime rates cannot be avoided by manipulating the pay for regular hours or otherwise reducing the pay for regular hours to make up for the … overtime rate that will have to be paid." *Reich v. Midwest Body Corp.* 843 F. Supp. 1249, 1251 (N.D.Ill. 1994) "[W]here different rates are paid from week to week for the same work and where the difference is justified by no factor other than the number of hours worked by the individual employee—*the longer he works the lower the rate*—the device is evasive and the rate actually paid in the shorter or nonovertime [period] is his regular rate for overtime purposes in all weeks." (29 C.F.R. § 778.327(b) (2004), see *Walling v. Hardwood Co.*, 325 U.S. 419 (1945) at p. 424 ["regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek"].) In other words, "the hourly rate paid for the identical work during [overtime] hours … cannot be lower than the rate paid for

nonovertime hours … ." (29 C.F.R. § 778.500(b) (2004).) Accord, *Huntington Memorial Hospital v. Superior Court*, 131 Cal. App. 4th 893, 904 (2nd DCA 2005). Here, the overtime hours in week one should be compensated at a different rate than the average of the overtime hours in week one plus week two, and because the rates vary non-linearly, the difference adversely impacts the employees to the benefit of the employer.

The Matrix system violates the social policy of California because the hourly wage rate for overtime compensation decreases the more hours worked. *Skyline Homes, Inc. v. Department of Industrial Relations* 165 Cal. App. 3d 239, 247(4th DCA 1985) aff'd on this point in *Morillion v. Royal Packing Co*., 22 Cal. 4th 575 (2000), *Ramirez v. Yosemite Water Co.,* 20 Cal. 4th 785 (1999). In *Espinoza v. Classic Pizza, Inc.,* 114 Cal. App. 4th 968, 972 (4th DCA 2003) the Court of Appeals reversed a trial court calculation of plaintiff's regular rate of pay by dividing his weekly salaries by 60, the number of hours the court found he worked, rather than 40, as required by Skyline Homes, for the time period that California had the 8 hour day law. Since January 1, 2000, the eight hour day has been mandated by California Labor Code 510(a). Subdivision (a) of California Labor Code Section 510 provides in part:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be

9

> compensated at the rate of no less than one and one-half times
> the regular rate of pay for an employee.

In addition, *Skyline Home's* requirement to use 40 hours as the denominator

in calculating the regular rate for overtime purposes has been legislatively adopted

at California Labor Code 515(d).[4]  Since overtime premium pay is as much a

penalty to the employer as compensation to the employee, and it would be

inconsistent with established rules of statutory construction to apply a penalty to

the persons whom the statute is designed to protect.  This logic applies to hourly

rate employees like Appellant as well as those misclassified and paid a salary

instead of hourly.[5]

Even federal law would not allow a decreasing regular rate in these

circumstances.  First, although the Matrix plan itself is posted at the site of

employment, the actual rate used to pay the employee is determined by events that

occur after the workweek begins.  While the scale is pre-determined, the actual rate

of pay is determined after the work is done, not before.  Since the employer is

---

[4] California Labor Code 515(d) states:  For the purpose of computing the overtime
rate of compensation required to be paid to a nonexempt full-time salaried
employee, the employee's regular hourly rate shall be 1/40th of the employee's
weekly salary.

[5] None of the examples in the State of California DLSE Enforcement Manual
http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf are on point,
because the Matrix is neither a piece rate, nor a production bonus, but is an hourly
rate where the rate varies by the quantity of revenue produced.  29 CFR 778.110(b)
defines production bonus as money paid in addition to the hourly rate.  Here the
Matrix determines an hourly rate.

responsible for setting the hours of work, it can manipulate the pay rate paid after

work has been done by simply assigning more non-revenue generating hours like

training or clean up at the end of the 15 day work period. Therefore, there really

is not a clear written agreement between the employer and employee setting the

hourly rate until after the 15 day work period is over. The FLSA does not allow

the employer to manipulate the hourly overtime rate by any "look back" greater

than the 168 consecutive hour workweek. Second, the exemption for decreasing

the hourly "regular rate" in response to increasing hours worked only applies if the

employer agrees to pay at least the minimum guaranteed "salary", even when there

is no work. 29 C.F.R.778.114(c)(". . . and the employer pays the salary even

though the workweek is one in which a full schedule of hours is not worked.").

And third, the exception for a fluctuating hourly "regular rate" does not apply to

hourly paid employees. As stated in *Clements v. Serco, Inc.,* 530 F.3d 1224, 1230

(10th Cir. 2008):

> Pursuant to the Department of Labor's regulations, the
> fluctuating workweek method is to be used when "there is a
> clear mutual understanding of the parties that the fixed salary is
> compensation (apart from overtime premiums) for the hours
> worked each workweek, whatever their number, rather than
> for working 40 hours or some other fixed weekly work period."
> Id. § 778.114(a). Under this kind of compensation structure, the
> salary "is intended to compensate the employee at straight time
> rates for whatever hours are worked in the workweek." Id.
> Thus, regardless of the fluctuating nature of the hours an
> employee may work, be it forty or sixty, the salary is intended
> to pay for all hours worked. In contrast, an employee who is

11

> compensated on an hourly basis is entitled to overtime
> calculated by the time-and-a-half method.

Instead, the Matrix plan has all the characteristics of a pseudo bonus plan

used to circumvent the FLSA and described at 29 C.F.R. 778.503. 29 C.F.R.

778.500 emphasizes that "Payment for overtime on the basis of an artificial

``regular" rate will not result in compliance with the overtime provisions of the

Act" Section b of 29 C.F.R. 788.500 describes some examples and characteristics

of unlawful pay plans that match the Matrix system at issue here. Specifically the

regulations warn that a variation of pay rates from workweek to workweek or

within the same workweek for the same work dependant on only the hours worked

is the hallmark of an illegal pay plan. Appellants have demonstrated with clear and

convincing evidence by comparing two pay stubs that the Matrix plan meets this

test of illegality. . 29 C.F.R. 778.503 gives an example of a pay plan that is

unlawful which resembles the Matrix plan with a 15 day work period at issue here.

As the regulations state at 29 C.F.R. 788.500(b)

> The device of the varying rate which decreases as the length of
> the workweek increases has already been discussed in Secs.
> 778.321 through 778.329. It might be well, however, to re-
> emphasize that the hourly rate paid for the identical work
> during the hours in excess of the applicable maximum hours
> standard cannot be lower than the rate paid for the nonovertime
> hours nor can the hourly rate vary from week to week inversely
> with the length of the workweek.

Appellee's examples in its brief don't apply because they do not use a variable regular rate in calculating overtime over a period longer than a work week. Instead, the examples already submitted by Appellant show that the overtime earned by an employee under the Matrix system with a 15 day work period varies significantly from the overtime paid by Appellee from one pay period to another. Under Appellee's logic, the examples supplied by Appellant could not have occurred. But it is undisputed that they did occur, which proves Appellee's examples are not correct. See, *e.g.* John Stuart Mill (1806-1873), *A System of Logic* (law of contradiction i.e. the same proposition cannot at the same time be false and true and the law of excluded middle i.e. either a proposition is true or it is false, but not both.)

Under the Matrix system, the more overtime the employee works, the less his overtime rate because either (1) he is more productive which means the rate of increase is less or (2) he is less productive, which means his hourly rate is decreased. And in the more common case of employees working overtime doing non-revenue generating tasks like cleanup or minding the till, although the gross amount earned by the employee increases with more hours worked, but not proportionally, the hourly rate decreases, so that overtime hours earn less per hour than the non-overtime hours worked. In addition, the gross revenue decreases if the employee is required to work more hours at a production rate less than the prior production rate.

13

Unlike a piece rate, the employee cannot increase his hourly rate under the Matrix system by continuing to work at the same rate but for more hours because he or she has to perform the non-revenue tasks required at the end of each day like cleanup and counting out the till. Because California has a daily overtime, and non-revenue tasks are done typically at the end of the day, the last hours of work, the overtime hours, are the least compensated. Therefore, the employee is penalized for working more hours overtime which violates California social policy to penalize/discourage the employer from allowing overtime to be worked, as expressed in the case of ***Skyline Homes, Inc. v. Department of Industrial Relations*** 165 Cal. App. 3d 239, 249 (1985)

## II.    USING A FIFTEEN DAY WORK PERIOD WITH A VARIABLE HOURLY RATE IS UNLAWFUL UNDER BOTH STATE AND FEDERAL LAW

"An employee's workweek is a fixed and regularly recurring period of 168 hours -- seven consecutive 24-hour periods." 29 CFR 778.105.   29 CFR 778.104 states:

> The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of

14

>            whether he is paid on a daily, weekly, biweekly, monthly or
>            other basis.

The 15 day work period allows the averaging of hours from one work week

to the next. Although the number of overtime hours is based upon a weekly total,

in this case, the overtime *rate* is based upon a bi-weekly plus a day (or more)

average. Since overtime is time and one half the regular rate, and because the

regular rate under the Matrix system varies by hours worked and revenues

generated under the Matrix plan, the 15 day workweek impermissibly decreases

the overtime rate applicable to one week based upon what happened in another

workweek. As 29 C.F.R. 778.104 continues:

>            The rule is also applicable to pieceworkers and employees paid
>            on a commission basis. *It is therefore necessary to determine*
>            *the hours worked and the compensation earned by*
>            *pieceworkers and commission employees on a weekly basis.*
>            [emphasis supplied]

In this case, Appellee admits it uses a 15 day work period, but argues the

results are the same as if it used a seven day period because it pays overtime on all

hours worked in excess of 40 per week or 8 per day. The fallacy of this argument

is that Appellee does not pay the overtime from one week based upon the regular

rate for that week. Instead, Appellee pays all overtime during the 15 day period at

the same rate, which means it pays the overtime for one week at the same rate as

the next, even though the hourly "regular" rates per week may differ.

In other words, Appellee averages out the "regular rate" between two workweeks and a day, which results in a regular rate less than if it paid overtime each workweek based upon the regular rate for that workweek. If more hours were worked in one work week with a high revenue generation, a higher hourly rate on the Matrix, the lower paid overtime hours from another workweek would then cancel out the overtime premium pay for the two work weeks in question. This problem was demonstrated by comparing the January 31, 2007 pay period overtime rates with the February 15, 2006 overtime rate. If the rates can differ from pay period to pay period, they can differ by workweek as well, and combining workweeks allows the employer to dilute the overtime earnings in one workweek with overtime hours worked in another. This is not a linear reduction that can be netted out in subsequent workweeks because the Matrix scale itself is non-linear, i.e. the reduction for lack of revenue generating work in one week may not reduce the pay for that workweek as much as averaging the two workweek's hourly revenue generation would. Although this combination of workweeks is not as obvious as offsetting overtime hours worked in one week with hours worked less than 40 in another, it is just as illegal for the same reasons. The system dilutes the overtime rate of pay based upon events occurring in a different workweek.

The exception at 29 C.F.R. 778.120 for commissions is not applicable to this case for four reasons. First, although the exception at 29 C.F.R. 778.120 only applies to commissions from sales, Appellees applied this system to non-

16

commission earnings which is the vast majority of the employees' income. Like Appellant, employees employed by Suprecuts cut hair for a living, which is a production function[6] and incidental sales of hair care products constitute only a very small percentage of the employee compensation. The exception for commissions is simply not applicable to the vast majority of compensation upon which the hourly rate is based. Second, the United States Department of Labor's exception for commissions also assumes that the rate of commission is uniform from week to week, a factor not present in the non-commission earnings under the Matrix system. If the commission rate went down for sales over longer periods, then employers would always claim they had to average out the payment of overtime on commissions in order to reduce the commission rate. As stated in *Travis v. Ray*, 41 F. Supp. 6, 9 (D. Ky. 1941) cited with approval in *Dove v. Coupe*, 245 U.S. App. D.C. 147 (D.C. Cir. 1985):

> The statute does not expressly provide for any unit of time over
> which the amount of compensation received can be averaged
> against the number of hours worked, in order to determine
> whether or not the average compensation per hour equals the
> minimum wage provided. It is quite often the case that an
> employee, working on commission basis, or a piece-work basis,
> may make more than the minimum wage during some of the
> hours he works and less than the minimum wage during the
> other hours he works. The average may be more than the
> statutory minimum amount. If the act is given a very strict

---

[6] *See, e.g. Keyes Motors, Inc. v. Division of Labor Standards Enforcement* 197 Cal. App. 3d 557, 563 (1987)(automobile mechanics not doing sales work when installing parts), *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785 (1999)(Water distribution employees not doing sales work when stacking or delivering product).

17

> construction such averaging is probably not permitted. Section
> 6 provides that every employer shall pay to his employee wages
> "not less than 25 cents an hour." This could very logically be
> construed as meaning not less than 25 cents for each hour
> considered separate and apart by itself. The act does not
> prevent the employer from paying more than the minimum for
> each hour, it merely fixes a minimum. No provision is made for
> crediting any excess in one hour against a deficit in another
> hour. However, the Wage and Hour Division in administering
> the act has adopted the work-week as the schedule period for
> determining whether or not an employee has received wages at
> a rate not less than the statutory minimum. The interpretation of
> a new statute by the Department charged with its
> administration, while not controlling upon the court, is entitled
> to great weight. [citations]. Such a construction in the present
> case is justified by the facts. The plaintiff was paid his wages
> on a weekly basis, making weekly settlements with the
> defendant. The rate per hour should be determined by treating
> each work week as a separate unit of time, the excess payment
> in one work week, if any, not being credited against any deficit
> which may exist in another.

Third, the exception is based upon a finding of impracticality of attribution

of commissions to a single work week, and there is no impracticability of

calculating the hourly wage component here. Cutting hair or selling shampoo is

not a multi-week process. The workweek from which the earnings are derived are

instantly attributable by using the computerized cash register. This is a cash and

carry service, and 29 C.F.R. §788.120 only applies "If it is not possible or

practicable to allocate the commission among the workweeks of the period in

proportion to the amount of commission actually earned or reasonably presumed to

be earned each week, [then] some other reasonable and equitable method must be

adopted." See, also *Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188, 191

(5th Cir. 1974)("The District Court must sort through these variables and adopt some "reasonable and equitable method" to allocate the commission "among workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week." ) The District Court did not make detailed findings that method of allocation from workweek to workweek was fair and reasonable in this case. Therefore, Appellees do not come within the literal language or the spirit of the exception for allocating commissions to multiple workweeks instead of using a single workweek to calculate the regular rate for hourly paid employees.

## CONCLUSION

For the reasons stated above, the decision of the District Court must be reversed.

Dated this 13th day of February, 2009.

THIERMAN LAW FIRM


By: /s/Mark R. Thierman
MARK R. THIERMAN

## CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(a)(7)

Pursuant to FRAP (a)(7), I certify that the attached brief is proportionately spaced and has a typeface of 14 point and contains 4,976 words.

DATED this 13th day of February, 2009.

THIERMAN LAW FIRM

By:___/s/Mark R. Thierman_____
MARK R. THIERMAN